IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KZSA BROADCASTING, INC, A California corporation; DIAMOND BROADCASTING, a California corporation, | ) ) ) ) | 2:10-cv-01213-GEB-EFB |
| Plaintiffs, | ) ) ) | ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS |
| v. | ) ) | |
| IMMACULATE HEART RADIO EDUCATIONAL BROADCASTING, INC., a California non-profit corporation; DOUGLAS M. DAGGS, SUCCESSOR TRUSTEE OF THE SYLVIA DELLAR SURVIVOR'S TRUST; DOUGLAS M. DAGGS, SUCCESSOR TRUSTEE OF THE DELLAR FAMILY TRUST; WEST AUCTIONS, INC.; GREAT AMERICAN MOVERS, INC.; Roes 1-10, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

        Defendant Douglas M. Daggs, successor trustee of the Sylvia

Dellar Survivor's Trust ("Daggs") moves for dismissal of Plaintiffs'

Second Amended Complaint under Federal Rule of Civil Procedure ("Rule")

12(b)(1) and 12(b)(6). Daggs argues the Rooker-Feldman doctrine bars

this action, and Plaintiffs have failed to state viable claims.

Defendant IHR Educational Broadcasting, Inc. ("IHR") also seeks

dismissal of Plaintiffs' claims under Rule 12(b)(6), arguing Plaintiffs

failed to allege a federal claim under 42 U.S.C. § 1981 or 42 U.S.C. §

1  1982, and the court should decline to exercise supplemental jurisdiction
2  over Plaintiffs' state law claims.

3  **I. LEGAL STANDARD**

4  **A.   Rule 12(b)(1)**

5       A "[r]ule 12(b)(1) jurisdictional attack[ ] can be either
6  facial or factual." White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).
7  Daggs' Rule 12(b)(1) dismissal motion is a facial attack because the
8  existence of subject matter jurisdiction depends on allegations in
9  Plaintiffs' complaint, rather than evidence extrinsic to the complaint.
10  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).

11       Plaintiffs bear the burden of demonstrating that federal
12  subject matter jurisdiction exists. See Kokkonen v. Guardian Life Ins.
13  Co., 511 U.S. 375, 377 (1994). However, "[i]n considering a facial
14  jurisdictional attack, a court must take the allegations in the
15  pleadings as true and draw all reasonable inferences in the
16  plaintiff[s'] favor." State Farm Life Ins. Co. v. Cai, No. 09-CV-00396-
17  LHK, 2010 WL 4628228, at *3 (N.D. Cal. Nov. 4, 2010) (citation omitted).

18  **B.   Rule 12(b)(6)**

19       A Rule 12(b)(6) dismissal motion tests the legal sufficiency
20  of the claims alleged in the complaint. Novarro v. Black, 250 F.3d 729,
21  732 (9th Cir. 2001). A pleading must contain "a short and plain
22  statement of the claim showing that the pleader is entitled to relief
23  . . . ." Fed. R. Civ. P. 8(a)(2). The complaint must "give the
24  defendant fair notice of what the [plaintiff's] claim is and the grounds
25  upon which relief rests . . . ." Bell Atlantic Corp. v. Twombly, 550
26  U.S. 544, 555 (2007).

27       Dismissal of a claim under Rule 12(b)(6) is appropriate only
28  where the complaint either 1) lacks a cognizable legal theory, or 2)

lacks factual allegations sufficient to support a cognizable legal theory. <u>Balistreri v. Pacific Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1988). To avoid dismissal, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 547.

In deciding a Rule 12(b)(6) motion, the material allegations of the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. <u>See al-Kidd v. Ashcroft</u>, 580 F.3d 949, 956 (9th Cir. 2009). However, conclusory statements and legal conclusions are not entitled to a presumption of truth. <u>See Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949-50 (2009); <u>Twombly</u>, 550 U.S. at 555. "In sum, for a complaint to survive a motion to dismiss, the nonconclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." <u>Moss v. United States Secret Serv.</u>, 572 F.3d 962, 969 (9th Cir. 2009).

## II.  REQUEST FOR JUDICIAL NOTICE

IHR's dismissal motion includes a request that the Court take judicial notice of its Articles of Incorporation and Certificate of Amendment of Articles of Incorporation, which were filed with the State of California Secretary of State on April 28, 1988, and November 10, 1999, respectively. (IHR's Req. for Judicial Notice, Exs. 4-5.) Plaintiffs do not oppose this request.

"As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688 (9th Cir. 2001) (quotations and citation omitted). However, a court may consider matters properly subject to judicial notice. <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 763 (9th Cir. 2007). A matter may be judicially noticed if it is either

"generally known within the territorial jurisdiction of the trial court" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Since the corporate documents are matters of public record, they may be judicially noticed. See Grassmueck v. Barnett, 281 F. Supp. 2d 1227, 1232 (W.D. Wash. 2003) (taking judicial notice of articles of incorporation). Therefore, IHR's request that these documents be judicially noticed is granted.[1]

### III. PLAINTIFFS' FACTUAL ALLEGATIONS

Plaintiffs allege this action is "about theft, conversion and race discrimination not withstanding [sic] any claims to possession to real property[,]" in which IHR, "a Roman Catholic operated radio station[,] conspired with [(Daggs),] the landlord of certain . . . real property [,] to drive an African American owned gospel radio station off the air and out of business . . . ." (Second Amended Complaint ("SAC") 2:23-24, 2:27-3:1.)

Daggs' predecessors-in-interest leased certain premises to Plaintiff KZSA Broadcasting, Inc. ("KZSA")'s predecessor-in-interest for the operation of a radio transmission tower in the late 1980's. Id. ¶ 12. KZSA acquired an interest in the lease in 1998. Id. ¶ 13.

KZSA entered into a Transmission Services Agreement ("TSA") with IHR around November of 2001, in which IHR conveyed "all of its rights, title and interest in and to the transmission equipment . . . then located at the [premises]." Id. ¶ 15. "IHR never had an ownership

---

[1]    IHR and Daggs also requested other documents be judicially noticed. However, since it has not been shown how these documents are relevant to Defendants' dismissal motions, the requests are denied.

interest in the tower located [on the premises, which] remains the property of [Plaintiffs]." Id.

Plaintiff Diamond Broadcasting ("Diamond") purchased KZSA in 2004, but KZSA "continued to operate as a going concern." Id. ¶ 16.

KZSA began to have difficulty with Daggs, "the alleged landlord of the Premises" in early 2010. Id. ¶ 18. "At some point in time[,] Daggs unlawfully seized Plaintiff's property by gating off the leased property, placing it under lock and preventing Plaintiff from accessing their property on the land." Id. ¶ 19. Ultimately, Daggs initiated an unlawful detainer action "to remove [Plaintiffs] and IHR" from the premises. Id. ¶ 18.

Daggs "terminated and interrupted the broadcast signal of [Plaintiffs'] Black owned gospel station, but left the signal of the white owned IHR in place, despite the fact that Daggs purported he was executing a Writ of Possession to remove all tenants on the property." Id. ¶ 23 (emphasis omitted). Daggs subsequently entered into a month to month lease with IHR to remain on the premises, using KZSA's equipment, but refused to contract with KZSA "to remain on air [using] its own equipment . . . ." Id. ¶¶ 21, 23.

In March 2010, IHR stopped making monthly payments due under the TSA. Id. ¶ 20. However, IHR "continued to use [Plaintiffs'] tower and other transmission equipment . . . ." Id. Plaintiffs subsequently learned that IHR "converted all of Plaintiffs' ground system to its use." Id.

Plaintiffs allege the unlawful detainer proceedings and above-described allegations were racially motivated. Id. at 3:26-27, ¶¶ 26-27, 35.

1                              **IV. DISCUSSION**

2          **A.    Rule 12(b)(1) Motion**

3              Daggs' Rule 12(b)(1) dismissal motion is based on the Rooker-
4    Feldman doctrine, which Daggs argues bars this action since the relief
5    Plaintiffs seek would "effectively declare the state court action
6    invalid." (Daggs' Mot. to Dismiss ("Daggs MTD") 4:25-5:1, 5:6-7.)
7    Plaintiffs rejoin that they "are not seeking a re-litigation of [the]
8    unlawful detainer action [but instead] seek[] monetary and exemplary
9    damages for discrimination based upon new and different facts than those
10   alleged in the unlawful detainer action." (Pls.' Opp'n to Daggs' Mot. to
11   Dismiss ("Daggs Opp'n") 7:16-19.)

12             The Rooker-Feldman doctrine bars "a federal district court
13   from exercising subject matter jurisdiction over a suit that is a de
14   facto appeal from a state court judgment." Kougasian v. TMSL, Inc., 359
15   F.3d 1136, 1139 (9th Cir. 2004). "Stated simply, the Rooker-Feldman
16   doctrine bars suits brought by state-court losers complaining of
17   injuries caused by state-court judgments rendered before the district
18   court proceedings commenced and inviting district court review and
19   rejection of those judgments." Carmona v. Carmona, 603 F.3d 1041, 1050
20   (9th Cir. 2010) (quotation omitted). "Rooker-Feldman . . . applies only
21   when the federal plaintiff both asserts as her injury legal error or
22   errors by the state court and seeks as her remedy relief from the state
23   court judgment." Kougasian v. TMSL, Inc., 359 F.3d at 1140.

24             Daggs has not shown that the Rooker-Feldman doctrine applies
25   to Plaintiffs allegations. Therefore, this portion of Daggs' motion is
26   denied.

27

28

**B.   Rule 12(b)(6) Motions**

    **1.   Issue Preclusion**

      Both defendants seek dismissal of Plaintiffs' 42 U.S.C. § 1981 ("§ 1981") and 42 U.S.C. § 1982 ("§ 1982") claims, arguing they are barred by an issue preclusion doctrine since they could have been raised in the state court unlawful detainer action. (IHR's Mem. of P.&A.'s in Support of Mot. to Dismiss ("IHR MTD") 12:18-24; Daggs MTD 9:15-17.) Plaintiffs respond, *inter alia*, that Defendants have the burden to prove the affirmative defense of issue preclusion, and they "simply [do] not provide a proper analysis of the requisite legal framework that would enable this Court to evaluate an application for preclusive effect of a prior state court judgment." (Pls.' Opp'n to IHR's Mot. to Dismiss ("IHR Opp'n") 2:7-10, 7:24-25; <u>see also</u> Daggs Opp'n 4:11-13.)

      Neither Defendant has provided sufficient authority in support of their issue preclusion dismissal requests; therefore, this portion of each motion is denied.

    **2.   42 U.S.C. §§ 1981 and 1982**

      Both IHR and Daggs seek dismissal of Plaintiffs' 42 U.S.C. §§ 1981 and 1982 claims, arguing Plaintiffs have failed to state viable claims under either statute. IHR argues Plaintiffs have not stated a § 1981 or § 1982 claim because both claims require the intent to discriminate, and Plaintiffs have not alleged facts from which it could be inferred that Defendants interfered with their contractual or property rights "solely because KZSA is African American or Black Owned." (IHR MTD 8:15-21, 9:24-26.)

///

///

///

1    Daggs argues Plaintiffs failed to plead a § 1981 or § 1982
2  claim since "Daggs did contract [with] plaintiff KZSA for at least six
3  (6) years without objection[,]" and "[a]s a general legal principal,
4  plaintiffs cannot state a claim under section 1981 once the initial
5  contracting period was completed." (Daggs MTD 8:1-5.)

6    42 U.S.C. § 1981 prescribes: "[a]ll persons "shall have the
7  same right . . . to make and enforce contracts . . . as is enjoyed by
8  white citizens."  To "make and enforce contracts" is defined to
9  "include[] the making, performance, modification, and termination of
10 contracts, and the enjoyment of all benefits, privileges, terms, and
11 conditions of the contractual relationship." 42 U.S.C. § 1981(b).

12    "What is required in a section 1981 action, . . . is that the
13 plaintiffs must show intentional discrimination on account of race."
14 Evans v. McKay, 869 F.2d 1341, 1344 (9th Cir. 1989) However, racial
15 discrimination need only be a motivating factor for the defendants'
16 conduct. DeHorney v. Bank of America National Trust and Savings Ass'n,
17 879 F.2d 459, 468 (9th Cir. 1989); Zhang v. American Gem Seafoods, Inc.,
18 339 F.3d 1020, 1029-30 (9th Cir. 2003).

19    42 U.S.C. § 1982 requires that all citizens "shall have the
20 same right . . . as is enjoyed by white citizens . . . to inherit,
21 purchase, lease, sell, hold, and convey real and personal property."
22 Although similar to a § 1981 claim, in the Ninth Circuit, "racial
23 motivation is not an element of [a §] 1982 *prima facie* case; only a
24 racial impact need be shown." Id.

25    Plaintiffs' allegations supporting their § 1981 and § 1982
26 claims, include the following:

27         Daggs . . . target[ed] KZSA and Diamond (the
           Black-owned businesses) but left IHR (the white
28         owned business) intact and undisturbed.

8

1           . . . .

2           Daggs, a white male . . . terminated and
interrupted the broadcast signal of the [b]lack

3 owned gospel station, but left the signal of the
white owned IHR in place, despite the fact that

4 Daggs purported he was executing a Writ of
Possession to remove all tenants on the property.

5 Daggs, by and through his attorney, then provided
continued notice and opportunity for IHR to enter a

6 contract for a month to month agreement to remain
on the land (using KZSA's equipment) and not

7 interfere with IHR continued transmission while IHR
looked for alternative transmission sites. Daggs

8 terminated KZSA with no such notice and refused
even indirect contract for KZSA to remain on air on

9 its own equipment which Daggs retained the
property.

10

          . . . .

11

12           Daggs refused to make a contract with KZSA
because it was black owned, but did agree to enter

into a month to month agreement with the white

13 owned IHR and offered the property at more
favorable terms and conditions.

14

15           IHR refused to enter into any form of
transmission agreement (none of which required

Daggs approval) because KZSA/Diamond is [b]lack

16 owned and IHR desired to appease Daggs, who refused
to allow the [b]lack owned company on the property

17 to reclaim its property.

18

          . . . .

19           The conduct, individually and acting in
concert of all defendants . . . in terminating the

20 lease of KZSA/Diamond, refusing to lease to KZSA
after IHR was allowed to rent and to interfere with

21 the rights of KZSA as a black-owned tenant to rent
office space in the same capacity as IHR, a white

22 tenant, including intentionally terminating leasing
agreements with KZSA to lease to IHR (white

23 management), and attempting to terminate contracts
has interfered with the plaintiff's right to lease

24 office space and has deprived them of the full and
equal benefits of laws and proceedings.

25

26 (SAC 5:12-14, ¶¶ 23, 26-27, 35.)

27 ///

28 ///

1        IHR responds to Plaintiffs' allegations that it is "white
2   owned" by arguing it cannot be "white owned" since it is a 501(c)(3)
3   corporation, and as such, "no part of the net earnings . . . shall inure
4   to the benefit of, or be distributable to, its members, directors,
5   officers or other private persons." (IHR MTD 7:15-23.) However, this
6   argument does not respond to Plaintiffs' allegations that IHR's
7   management is "white." Since the words "white owned" are capable of more
8   than one inference, "the court must adopt whichever inference supports
9   a valid claim." <u>Medical Laboratory Management Consultants d/b/a</u>
10  <u>Consultants Medical Lab v. American Broadcasting Companies, Inc.</u>, No.
11  CIV-95-2494-PHX-ROS, 1997 WL 405908, at *1 (D. Ariz. Mar. 27, 1997)
12  (quotation omitted).

13       Defendants have not shown that Plaintiffs' racial
14  discrimination allegations are insufficient to allege both a racial
15  impact and intentional racial discrimination. <u>See generally</u> <u>Craig v. US</u>
16  <u>Bancorp</u>, No. 03-1680-AA, 2004 WL 817149, at *4 (D. Or. Apr. 14, 2004)
17  (finding allegations of differential treatment, including a denial of
18  service compared to similarly situated Caucasian individuals
19  "sufficiently [stated] facts that raise a reasonable inference of intent
20  to discriminate against [plaintiff] on the basis of his race").
21  Therefore, each Defendant's motion to dismiss Plaintiffs' § 1981 claim
22  and § 1982 claim is denied.

23       **3.   Business & Professions Code § 17200**

24       Daggs also seeks dismissal of Plaintiffs' California Business
25  and Professions Code section 17200 ("§ 17200") claim, arguing in a
26  conclusory manner that Plaintiffs cannot rely upon 18 U.S.C. § 1362 as
27  its predicate "unlawful" activity. (Daggs MTD 10:16-20.)

28

1    California's Unfair Competition Law, § 17200, prohibits
2 "unlawful, unfair or fraudulent" business acts and practices. "By
3 proscribing 'any unlawful' business practice, section 17200 'borrows'
4 violations of other laws and treats them as unlawful practices that the
5 unfair competition law makes independently actionable." Cel-Tech
6 Communic'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 180
7 (1999) (citation omitted).

8    Since Daggs has not shown that § 1362 cannot provide the
9 "unlawful" predicate activity to support Plaintiffs' § 17200 claim, this
10 portion of his motion is denied.

11    **4.   Theft & Conversion**

12    Daggs also seeks dismissal of Plaintiffs' claim for "theft and
13 conversion" of personal property, without showing that Plaintiffs failed
14 to plead the elements of this claim. Therefore, this portion of his
15 motion is denied.

16    **5.   Declaratory Relief**

17    Daggs also seeks dismissal of Plaintiffs' request for
18 declaratory relief, in which Plaintiffs request a "declaration of
19 ownership as to all personal property held by [Diamond] . . . acquired
20 in the Purchase Transaction." (SAC ¶ 93.) This portion of Daggs' motion
21 includes "a factual dispute not amenable to determination on a motion to
22 dismiss." Fox v. Hildebrand, No. CV 09-2085 DSF (VBKx), 2009 WL 1977996,
23 at *3 (C.D. Cal. July 1, 2009). Therefore, it is denied.

24    **6.   Civil Conspiracy**

25    Daggs also seeks dismissal of Plaintiffs' claim alleging a
26 civil "conspiracy between [Daggs] and his attorneys." (Daggs MTD 12:3-
27 8.) However, since this claim is not pled, this portion of his motion is
28 denied as moot.

**V. CONCLUSION**

For the stated reasons, each Defendant's dismissal motion is DENIED.

Dated:  December 17, 2010

_____
GARLAND E. BURRELL, JR.
United States District Judge